UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brooks Holmgren, | File No. 22-cv-997 (ECT/DJF) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Woodside Credit, LLC, | |
| Defendant. | |

Paul Shapiro and Abby Sunberg, Taft Stettinius & Hollister, Minneapolis, MN, for Plaintiff Brooks Holmgren.

Mickey L. Stevens, Dykema, Minneapolis, MN; and Ross B. Hofherr, Harris Beach PLLC, New York, NY, for Defendant Woodside Credit, LLC.

Plaintiff Brooks Holmgren refinanced his purchase of a high-performance Porsche automobile with Defendant Woodside Credit. Holmgren titled the car originally in Minnesota, where he lives and where he keeps the car. After the refinancing transaction closed, Woodside unilaterally re-titled the car in Nevada.

Holmgren brought this case alleging that Woodside's re-titling of the car breached the financing contract and diminished the car's value. Woodside counterclaimed, alleging that Holmgren breached the financing contract by failing to provide Woodside with required information and that Holmgren's actions caused Woodside to incur additional costs and impaired its security interest in the car. Holmgren and Woodside agree that, owing to a choice-of-law clause in the financing agreement, California law governs their competing claims.

Holmgren moves to dismiss Woodside's counterclaim under Federal Rule of Civil Procedure 12(b)(6). Holmgren's motion will be granted because Woodside fails to allege facts plausibly showing that Holmgren's actions caused it to incur damages, an essential element of Woodside's breach-of-contract claim under California law. Though Woodside's counterclaim will be dismissed, Woodside (and Holmgren) will be allowed to seek recovery of attorneys' fees and costs in the event it is the "prevailing party" as that term is used in California Civil Code § 1717(a).[1]

I[2]

Plaintiff Brooks Holmgren purchased a new Porsche 911 GR2 RS in February 2019. Am. Compl. ¶ 14. The purchase price was "$345,147.94, excluding various fees and

---

[1] Holmgren and Woodside accuse each other of improper behavior. According to Holmgren, "Woodside is retaliating against Holmgren for bringing Woodside's misconduct to light, and that retaliation has taken the form of a contrived breach-of-contract claim and, on top of that, a baseless request for attorneys' fees." ECF No. 65 at 4. According to Woodside, "Holmgren's motion [to dismiss the counterclaim] is nothing more than a waste of party and judicial resources." ECF No. 74 at 6. Though these accusations plainly implicate Rule 11, neither party seeks sanctions against the other. Though I wonder whether this case might have been litigated more efficiently to this point, *see infra* at 8, n.5, based on what I have seen thus far, I do not believe that Holmgren, Woodside, or any lawyer has acted with an improper purpose.

[2] The familiar standards governing a Rule 12(b)(6) motion require the facts to be drawn from Woodside's Amended Counterclaim [ECF No. 52] and materials embraced by that pleading, not from Holmgren's operative First Amended Complaint [ECF No. 37]. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). It is difficult to adhere strictly to that rule here, however, because Woodside's Amended Counterclaim omits several basic background facts that are necessary to understanding and teeing up the Parties' disputes. Regardless, this problem seems academic. Nothing in Woodside's response to Holmgren's motion suggests these facts are in play, and the better course is just to describe them here to set the table for the disputed legal questions.

2

taxes." *Id.* The vehicle is rare—there are fewer than 50 like the one Holmgren purchased[3]—and the car "is fully customized in terms of aftermarket options and features, many of which were specially installed by Porsche Minneapolis." *Id.* ¶ 15.

Holmgren is a Minnesota citizen, and he titled the car in Minnesota. *Id.* ¶¶ 9, 16. He originally financed the car's purchase through Porsche Financial Services, Inc. *See id.* ¶¶ 1, 16. In April 2019, the State of Minnesota issued a title certificate identifying Holmgren as the car's owner and Porsche Financial Services, Inc. as the only secured lienholder. *Id.* ¶ 16.

In May 2019, Holmgren refinanced the car through Woodside. *Id.* ¶ 17; *See* Am. Countercl. ¶ 1. Woodside is a limited-liability company with no Minnesota-citizen members. Am. Compl. ¶ 10; Answer ¶ 10. It is based in California and "specializ[es] in financing for exotic and collectible automobiles." Answer ¶ 1.

As part of the refinancing, Holmgren and Woodside executed a "Promissory Note and Security Agreement dated May 29, 2019." Am. Countercl. ¶ 1; *see* ECF No. 15-1 at 2–4.[4] As relevant here, the Agreement granted Woodside a security interest in the car, "all parts or accessories attached to [it]," and any "money or goods" Holmgren might receive for the car (including, for example, insurance proceeds). Am. Countercl. ¶ 3.a.; ECF No. 15-1 at 3.

---

[3]   Holmgren alleges only that there "50 or fewer" like his. Am. Compl. ¶ 15. He does not allege whether there are 50 or fewer in the United States or worldwide. *See id.*

[4]   Page cites are to CM/ECF pagination appearing in a document's upper right corner, not to a document's original pagination.

3

The Promissory Note and Security Agreement included provisions imposing obligations on Holmgren, two of which are chiefly at issue here. The first of these described Holmgren's obligations with respect to the car's title vis-à-vis Woodside's security interest:

> **Failure to Provide Title.** You agree to promptly execute or re-execute all documents we request to name you as owner on the title to the Vehicle and to perfect our lien on the Vehicle, and you authorize us to file such documents, including a UCC financing statement if we deem necessary. You will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless we are required by law to pay such fees and costs. You also agree to promptly provide us with any other executed forms, including proof of any required inspection, we may need under applicable law to complete the registration process. If you fail to do these things to our satisfaction, you will be in default of this Agreement. In addition, if you are responsible for perfecting our security interest, you will be in default of this Agreement if you fail to promptly provide us with a title showing us as the sole lienholder. To the extent permitted by applicable law, you authorize us as your attorney-in-fact to sign your name on any documents necessary to properly record and perfect our security interest should you fail to do so. You agree that we may assign our security interest hereunder without your consent.

ECF No. 15-1 at 3.

Woodside alleges that Holmgren breached this provision. Specifically, Woodside alleges that it emailed Holmgren on June 4, 2019, "seeking his cooperation in providing Woodside with an original lien[-]free title (provided by Porsche Financial Services to Plaintiff), and [an] original executed Power of Attorney (form provided to Plaintiff by Woodside), and Plaintiff's current insurance card for the vehicle." Am. Countercl. ¶ 4. Woodside believes "these documents are required by the State of Minnesota when

4

recording a lien on title." *Id.* ¶ 5. Plaintiff did not comply with this request. *Id.* ¶ 6. "On August 27, 2019, Woodside contacted Plaintiff via email to advise that Woodside still had not received the original lien[-]free title, and that it was urgent that Plaintiff send the title to Woodside immediately." *Id.* ¶ 7. Between September 2 and September 12, Holmgren and Woodside communicated further regarding these issues. *Id.* ¶¶ 8–11. It is not clear from the Amended Counterclaim whether Holmgren sent Woodside nothing in response to Woodside's request, or whether whatever documentation Holmgren sent was insufficient. Regardless, on September 12, 2019, Woodside told Holmgren that he "needed [] to execute a power of attorney" that would enable Woodside's title agent, Corporation Service Company, to retitle the vehicle in a way that perfected Woodside's security interest. *Id.* ¶¶ 10–11, 13. Holmgren executed the power-of-attorney form "on September 17, 2019[,] before a notary and returned the executed power of attorney to Woodside on September 19, 2019." *Id.* ¶ 12; *see also id.* ¶ 13 (alleging power-of-attorney form's content). To perfect its security interest, Woodside re-titled the car "in Nevada without Holmgren's cooperation." *Id.* ¶ 18.

Woodside alleges it incurred damages in connection with Holmgren's breach of the **Failure to Provide Title** provision. According to Woodside, "it incurred additional costs, in an amount to be determined at trial, associated with perfecting its security interest." *Id.* "These costs include expenses incurred by Woodside directly, and indirectly through Woodside's Nevada title agent and other [unidentified] vendors[,]" all to re-title the car in Nevada. *Id.*

5

Woodside alleges it is entitled to recover these damages pursuant to a specific provision in the Promissory Note and Security Agreement, entitled **Use of Vehicle**. *Id.* Relevant to this remedy, that provision says:

> Although we are not obligated to do so, if we pay any liens, fees, maintenance or taxes in connection with the Vehicle, or advance any other amount to protect our interest in the Vehicle, you will reimburse us, at our option, within five (5) days of our demand upon you to do so, or we may add the amount of any such liens, fees, maintenance or taxes or other charges we pay to the Principal balance. Such amounts will accrue finance charges at the rate set forth above. Unless you have paid us such amounts prior to maturity, they will be due at the maturity of this Agreement.

ECF No. 15-1 at 3.

Woodside also alleges what it labels an "alternative" damages theory: if re-titling the car in Nevada reduced the vehicle's value (a proposition Woodside disputes), that was caused by Holmgren's breach of the **Failure to Provide Title** provision and "diminished" the value of Woodside's security interest. Am. Countercl. ¶ 20. Holmgren, Woodside claims, is responsible for damages relating to the diminishment of Woodside's security interest.

In addition to breaching the Promissory Note and Security Agreement's **Failure to Provide Title** provision, Woodside alleges that Holmgren breached a provision regarding insurance. *See id.* ¶¶ 3.d., 14–16. This provision reads:

> **Insurance.** You agree to keep the Vehicle insured at all times during the term of this Agreement in our favor or that of our assignee at the address specified from time to time by us or our assignee with a policy and insurance provider satisfactory to us, with comprehensive fire, theft and collision coverage, insuring the Vehicle in an amount sufficient to cover the value

> of the Vehicle, and providing for a deductible equal to not more than two percent (2%) of the original Principal balance. You may obtain the insurance from any insurer or broker you choose that is reasonably acceptable to us. You agree to obtain and deliver to us a loss payable endorsement on such insurance. You agree that we may (1) contact your insurance agent to verify coverage or to have us added as a loss payee, (2) make any claim under your insurance policy for physical damage or loss to the Vehicle, (3) receive any payment for loss or damage, or return premium, and apply amounts we receive, at our option, to replacement of the Vehicle or to what you owe under this Agreement, including indebtedness not yet due. If you fail to maintain such insurance, we may, at our option, obtain such insurance to protect our interest in the Vehicle. The insurance we purchase may not cover your interests. You understand that the insurance premiums may be higher if we must purchase such insurance than if you had purchased the insurance yourself. Whether the Vehicle is insured, you must pay us all that you owe us if the Vehicle is lost, stolen, damaged or destroyed.

ECF No. 15-1 at 3.

Woodside alleges that it asked Holmgren "to provide his current insurance card for the vehicle," but Holmgren failed to comply. Am. Countercl. ¶ 14. Woodside also alleges that Holmgren "failed to provide Woodside with a loss[-]payable endorsement on his insurance in favor of Woodside." *Id.* ¶ 15. Woodside alleges that Holmgren's failure "to provide Woodside with requested insurance documentation" breached the Promissory Note and Security Agreement. *Id.* ¶ 28; *see also id.* ¶ 16 (alleging that "Holmgren's failure to provide the insurance card" breached the Agreement). The Amended Counterclaim does not allege what, if any, damages Woodside suffered as the result of Holmgren's failure to provide this insurance-related information.

7

II[5]

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the challenged pleading and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792 (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleading must "state a claim to relief that is plausible on its face." *Id.* at 570.

Woodside asserts only a breach-of-contract claim. Am. Countercl. ¶¶ 25–29. It alleges (1) that the Promissory Note and Security Agreement "is a valid and binding contract between Woodside and Holmgren," *id.* ¶ 26; (2) that "Woodside has fully performed its obligations under the . . . Agreement," *id.* ¶ 27; (3) that Holmgren breached the Agreement by failing to provide Woodside with title and insurance-related information, *id.* ¶ 28; and (4) that "Woodside has incurred damages in excess of $75,000, to be proven at trial," including the additional costs it incurred "associated with protecting its security interest" and retitling the car in Nevada or, alternatively, the car's diminution in value

---

[5] Holmgren filed the case on April 20, 2022. ECF No. 1. The Parties agree that the case is not complicated. Holmgren has described the issues in this case as "relatively simple." ECF No. 22 at 48 (quotation omitted). Woodside has described this case as "relatively straightforward." ECF No. 74 at 5. So one might reasonably question why this case remains at the motion-to-dismiss stage. It seems too old and uncomplicated for that. Without recounting the case's entire, 92-docket-entries-long procedural history, the short answer is that the Parties have filed several nondispositive and dispositive motions, *see* ECF Nos. 5, 12, 43, 63, 83, and stipulated to extend several deadlines, including briefing deadlines for those motions, *see* ECF Nos. 9, 18, 24, 34, 57, 89. The first round of Rule 12 motions—filed by Woodside—was ruled on from the bench at a hearing on October 11, 2022. *See* ECF Nos. 29, 30. The current motion was heard on March 27, 2023. ECF No. 77.

resulting from the retitling, *id.* ¶¶ 29, 18, 20–21.  In addition to damages as a remedy, Woodside seeks to recover its attorneys' fees and costs under what it says is a fee-shifting provision in the Promissory Note and Security Agreement.  *Id.* ¶¶ 22–24, 29.

Woodside and Holmgren agree that California law governs Woodside's breach-of-contract counterclaim.  *See* ECF No. 65 at 9 n.2; ECF No. 74 at 12–19 (applying California law).  Under California law, "[t]he elements of a cause of action for breach of contract are: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *GemCap Lending I, LLC v. Mann*, No. CV 19-2499 PSG (RAOx), 2020 WL 5934290, at *5 (C.D. Cal. July 31, 2020) (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

Holmgren challenges essentially the fourth element, arguing that Woodside has failed to allege facts plausibly showing that Holmgren's breaches resulted in damages to Woodside.  With respect to this element, "a breach of contract claim requires a showing of appreciable and actual damage." *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009), *aff'd*, 380 Fed. App'x 689 (9th Cir. 2010); *see also Andreoli v. Youngevity Int'l.*, No. 3:16-cv-2922-BTM-JLB, 2021 WL 4943569, at *5 (S.D. Cal. Mar. 23, 2021) ("To satisfy the damages element a plaintiff must show appreciable and actual damage[s], that are clearly ascertainable in both their nature and origin.").  "Where a plaintiff has failed to allege that the defendant's breach has caused her to suffer any damage, a breach of contract action for damages will not lie." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1139–40 (N.D. Cal. 2014).  Allegations plausibly showing that damages are merely possible or may result from a defendant's breaches is not sufficient.  *Buschman v. Anesthesia Bus.*

9

*Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014); *see also Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 234218, at *5 (N.D. Cal. Jan. 21, 2014) ("Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury.").[6]  A damages theory that is barred by, or at odds with, a governing contract's terms does not meet the damages element, either. *Andreoli*, 2021 WL 4943569, at *5.

Woodside's first damages theory—that it incurred additional costs in re-titling Holmgren's car in Nevada—is not plausible because, as pleaded, it is at odds with the contract provision on which it relies.  To recap, Woodside alleges that Holmgren's failure to provide title documents necessary to perfect Woodside's lien forced Woodside to re-title the car in Nevada and incur additional expenses in doing so.  Again, as pleaded, Woodside alleges only that it is entitled to recover these expenses under the Promissory Note and Security Agreement's **Use of Vehicle** provision.  Am. Countercl. ¶ 18 ("Pursuant to the 'Use of Vehicle' provision in the Woodside Agreement, Woodside demands, and is entitled to, reimbursement of these additional costs[.]").  The relevant part of the **Use of Vehicle** provision describes the specific mechanism by which Woodside may recover these costs:

> Although we are not obligated to do so, if we pay any liens, fees, maintenance or taxes in connection with the Vehicle, or advance any other amount to protect our interest in the Vehicle, you will reimburse us, at our option, within five (5) days of our demand upon you to do so, or we may add the amount of any

---

[6]   It doesn't matter here, but there is at least some debate about whether nominal damages are sufficient to meet the damages element of a breach-of-contract claim under California law.  *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, --- F. Supp. 3d ---, No. 17-cv-03301-EMC, 2022 WL 18399982, at *8 (N.D. Cal. Nov. 4, 2022); *Lundy v. Facebook Inc.*, No. 18-cv-06793-JD, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021).

10

> such liens, fees, maintenance or taxes or other charges we pay to the Principal balance.  Such amounts will accrue finance charges at the rate set forth above.  Unless you have paid us such amounts prior to maturity, they will be due at the maturity of this Agreement.

ECF No. 15-1 at 3.  I understand this provision to give Woodside two options for recovering these costs: either (1) provide a "demand upon" Holmgren for the costs, which Holmgren must pay "within five (5) days" of receipt, or (2) add the costs to Holmgren's outstanding balance.

Woodside's counterclaim for these amounts is not compatible with this provision.  It is difficult to see how the Amended Counterclaim is a "demand" for the simple reason that Woodside specifies no demand amount in its pleading.  In other words, how could Holmgren be expected to pay a "demand" within five days if Woodside opts not to identify the demand's amount?  It also is difficult to understand how a federal-court counterclaim with its 21-day responsive-pleading deadline, Fed. R. Civ. P. 12(a)(1)(B), might be reconciled with the provision's 5-day deadline in which to pay the demand.  The second option—simply adding these amounts to Holmgren's outstanding balance—also seems incompatible with filing suit, at least right away.[7]

Woodside advances essentially two arguments to defend its re-titling-costs damages theory, but neither argument is persuasive.  First, Woodside argues that its Amended Counterclaim counts as a "demand" under the **Use of Vehicle** provision because its claim

---

[7] Of course, if Woodside added the amount of costs it incurred to retitle Holmgren's car in Nevada to Holmgren's principal balance and Holmgren failed to pay as required under the Agreement, then Woodside would have the ability to sue Holmgren.  Holmgren does not dispute this.

11

is not speculative. *See* ECF No. 74 at 13–14. To support this argument, Woodside cites cases in which federal courts addressed whether claims were "ripe" in the Article III sense. *Id.* (citing *Public Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932–33 (8th Cir. 2005) and *Fidelity and Guar. Ins. Co. v. Centex Homes*, No. 1:14-CV-826-LJO-GSA, 2014 WL 5823048, at **3–7 (E.D. Cal. Nov. 10, 2014)). The five-day deadline the **Use of Vehicle** provision imposes on a demand's recipient necessarily implies that the demand be more precise than what ripeness doctrine requires of a claim to confer Article III standing. Incorporating ripeness doctrine into the provision would leave the recipient of a merely "non-speculative"—but also non-specific—demand guessing as to how much might be owed.

Second, Woodside argued at the hearing on this motion that, if the **Use of Vehicle** provision can't be the source of its damages claim, then another provision—entitled "**Remedies**"—can be. As relevant to this question, this provision says that, if Holmgren is in default, Woodside may, among other remedies, "file suit" to recover any outstanding amounts Holmgren owes. ECF No. 15-1 at 3. Woodside's Amended Counterclaim does not allege this theory, and Woodside cannot amend its counterclaim (a second time) in an opposition brief or at oral argument. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). If the Amended Counterclaim alleged this theory, it would risk violating contract-interpretation principles the Parties have not addressed. *See Milmoe v. Gevity HR, Inc.*, No. C 06-04721 SBA, 2006 WL 2691393, at *4 (N.D. Cal. Sept. 20, 2006) (applying the "well-established principle[] of contract

12

interpretation" that, "when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision" (quotation omitted)); *see also Carson v. Mercury Ins. Co.*, 148 Cal. Rptr. 3d 518, 527 (Cal. Ct. App. 2012) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." (quoting 11 Williston on Contracts § 32:5 (4th ed. 2012))). Woodside tethered its re-titling-costs damages theory to the more specific **Use of Vehicle** provision. Allowing Woodside to proceed under the more general **Remedies** provision would seem to enable Woodside to sidestep the specific and more limited options the **Use of Vehicle** provision authorizes.[8]

Woodside alleges an alternative to its re-titling-costs damages theory. This alternative theory is described as follows in the Amended Counterclaim:

> Although Woodside maintains that there was no decrease to the Vehicle's value as a result of the Vehicle being titled in Nevada as alleged by Holmgren, Woodside alleges, in the alternative, to the extent a determination is made that any such decrease in value occurred, such decrease was caused by Holmgren's breaches and Woodside necessarily suffered damages of an equal, or greater, amount in that the value of its security interest was diminished as a result of the decrease in value of the Vehicle in an amount to be determined at trial.

Am. Countercl. ¶ 20.

This damages theory is implausible because, as pleaded, it is speculative. To understand why, contrast how a diminution in the car's value affects Holmgren with how

---

[8] As noted earlier, though Woodside alleges that Holmgren's failure to provide insurance information breached the Promissory Note and Security Agreement, the Amended Counterclaim includes no allegations showing how this breach caused Woodside any injury.

it might possibly affect Woodside. A diminution in the car's value affects Holmgren immediately because he owns the car. Holmgren's theory underlying his claims is that re-titling the car reduced its value in the same way as if the car were dented in a crash or stolen by someone who took the car for a day-long joy ride and put hundreds of additional miles on the car. As the car's owner, Holmgren plausibly suffers damages owing to events like these when they occur. Woodside's security interest is materially different. Woodside does not suffer legal damages owing to the car's diminution in value. It faces a risk that, with enough damage, the car's value might drop below the amount of Holmgren's balance and, if that happens, then a risk that, if Holmgren defaults, Woodside might have to look beyond the car as collateral to recover Holmgren's outstanding balance. In other words, Woodside might possibly suffer money damages in the future, but it hasn't yet.[9] Because Woodside has no plausible damages theory, Holmgren's Rule 12(b)(6) motion will be granted, and Woodside's breach-of-contract counterclaim will be dismissed.

### III

The final question concerns attorneys' fees. Holmgren seeks attorneys' fees in his operative First Amended Complaint's prayer for relief (at 10, ¶ 4). But after Woodside mirrored this request in its Amended Counterclaim (at 20, ¶ 2), Holmgren objected. There is some uncertainty about whether the dismissal of Woodside's affirmative claim makes it

---

[9] The Promissory Note and Security Agreement anticipates the diminution-in-value risk by requiring Holmgren to do certain things and not do other things to protect the car's value. These requirements are described in the Agreement's **Use of Vehicle** provision. Whatever rights Woodside might have under the Agreement to take possession of the car and sell it at auction to protect its security interest if Holmgren violated these requirements, that equitable remedy is not what Woodside seeks here.

14

necessary to decide this question. Woodside's pleading is not clear about whether it would have made this request just defensively had it not filed its Amended Counterclaim. Better just to address the issue now.

As authority for its attorneys'-fees request, Woodside relies on a one-way fee-shifting provision in the Promissory Note and Security Agreement. That provision reads:

> If we must pursue collection, or hire an attorney to collect what you owe, you will reimburse us our reasonable collection costs and attorneys' fees when we demand.

ECF No. 15-1 at 3. This sentence appears in the Agreement's general **Remedies** provision. *Id.* Notwithstanding his attorneys'-fees request, Holmgren argues based on the **Remedies** provision's plain text that "this fee-shifting provision applies only when a borrower fails to timely pay Woodside, and Woodside then pursues collection or repossession measures to recover the money it's owed." ECF No. 65 at 15. Woodside disagrees. It characterizes its breach-of-contract claim as brought "to collect" damages "owe[d]" by Holmgren. ECF No. 74 at 18. Failing that argument, Woodside says that a California statute, California Civil Code § 1717(a), applies to "expand" the fee-shifting provision to cover this dispute.

With Woodside's breach-of-contract claim dismissed, it is not reasonable to say that Woodside is "pursu[ing] collection" in this case or that it "hire[d] an attorney to collect what [Holmgren] owe[s]." ECF No. 15-1 at 3. The issue, therefore, is whether the California statute broadens the fee provision to cover this entire case. The statute reads:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is

15

> determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

Cal. Civ. Code § 1717(a). "The statute was designed to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party, and to prevent the oppressive use of one-sided attorney fee provisions." *Trope v. Katz*, 902 P.2d 259, 267 (Cal. 1995). The statute is interpreted liberally. *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1216 (9th Cir. 2009); *see also Reyes v. Beneficial State Bank*, 291 Cal. Rptr. 3d 657, 674–75 (Cal. Ct. App. 2022) (applying the statute so that "the [fee-shifting] provision is not limited to fees incurred in collection efforts"); *Paul v. Schoellkopf*, 26 Cal. Rptr. 3d 766, 769–70 (Cal. Ct. App. 2005) (discussing history of "entire contract" addition to Cal. Civ. Code § 1717(a) and concluding that "parties may not limit recovery of attorney fees to a particular type of claim, such as failure to pay [collection] costs").[10]

Under § 1717(a), the fee-shifting provision will be deemed to apply to Holmgren's suit, meaning fee-shifting is available for the benefit of Holmgren and Woodside. Start with the statute's second sentence. Neither Holmgren nor Woodside suggests that either were "represented by counsel in the negotiation and execution of the contract[.]" *Id.*

---

[10] Holmgren suggests that "the best reading of the Agreement and of California law is that fee-shifting is reserved only for *debt-collection actions*." ECF No. 75 at 19. Holmgren has not, however, cited any authority to support his comparatively narrow reading of § 1717(a).

Regardless, nowhere is "the fact of that representation . . . specified in the contract." *Id.* Therefore, notwithstanding the fee-shifting provision's textual limitations, it must "be construed as applying to the entire contract." *Id.* Now move back to the statute's first sentence. There is no question this is an "action on a contract" in the relevant sense: Holmgren asserts a breach-of-contract claim under the Promissory Note and Security Agreement. First Am. Compl. ¶¶ 44–49. There also is no question that the Agreement "specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to one of the parties"—Woodside. ECF No. 15-1 at 3. In this situation, the statute's directive is clear: "the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." In other words, Holmgren and Woodside may allege entitlement to attorneys' fees and costs in their pleadings, and whichever of them turns out to be the "prevailing party" may seek this recovery after that status is established.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Holmgren's Motion to Dismiss [ECF No. 63] is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is **GRANTED** to the extent it seeks dismissal of Woodside's First Amended Counterclaim. Woodside's First Amended Counterclaim [ECF No. 52] is **DISMISSED WITHOUT PREJUDICE**.

17

2. The Motion is **DENIED** to the extent it seeks dismissal of Woodside's request for "reasonable attorneys' fees."

Dated: May 5, 2023                                s/ Eric C. Tostrud
                                                  Eric C. Tostrud
                                                  United States District Court